May it please the court, I am Richard Tennant and I am here on behalf of Mr. Paul Woods. Before us today are two related issues related to the significant substantial assistance Mr. Woods provided both in a murder trial and in preventing the murder of witnesses and also in intercepting contraband going into two separate U.S. prisons. The first issue related to that is whether a U.S. attorney for the Eastern District of Tennessee was given a Rule 35 motion to reduce his life sentence to something or to just ask that it be reduced to something less than life and whether that promise is binding in the Middle District of Tennessee. The second related issue to that or that follows from that is if it was only a request and not a promise, did the U.S. attorney for the Middle District of Tennessee act either unconstitutionally or not rationally in pursuing a legitimate government purpose in refusing to honor that request or I should say did we put on a substantial threshold showing that that's what happened so that we could engage in discovery and have an evidentiary hearing to further develop those. I also say at the very end when the light turns yellow I need to address the issue of whether an opinion should be issued under an alias name. I think that's been referred to the whole panel and I'll try to do that very briefly. In terms of my promise argument, at one level I need to defer to you because clearly two sets of intelligent people have read this transcript and interpreted it radically differently. My side has read that there was an unequivocal promise that a Rule 35 motion would be filed and the only issue is whether a judge would grant it. That's what my reading and Mr. Wood's reading has been that the Honorable Patrick Malloy said it will be up to the judge. When Mr. Wood says there's no promises, it will be up to the judge, he is further ratifying the understanding that you guys can't promise me that a judge will actually reduce my sentence. A judge already in the Middle District of Tennessee turned down a plea bargain where I could have gotten 20 years and gave me life in prison. He darn well knows that the judge may not grant it. But obviously other intelligent people have read this in a very different way. I only want to cite one observation. We can get back to the language. There's language that I've seen that says, first of all, Mr. Woods, what do you anticipate or hope the government might do for you? And what do you understand a Rule 35 to be? Well, the government, they haven't made any promises. They can only recommend and file a Rule 35 and there's nothing guaranteed. That's the language that we're talking about or is there some other language? In the end, I think probably more important then is what Mr. Malloy follows that up with and he says, I can recommend that it is correct. Yes, sir. But it is ultimately up to the judge. And obviously, I'm going to defer to your reading of that. But I want to remind us what we're doing here. This was a jury trial where Patrick Malloy had every interest in making Mr. Woods' testimony as strong as possible. Any caveats needed to go on the record right then and there because they were going to strengthen Mr. Woods' testimony. Because he was going to be attacked by Dwayne Gravely as he was. You're just saying all this because you want to get out of your life sentence. That was obviously the realm of cross-examination that any defense attorney or pro se litigant in this case would have done and in fact did do. So the simple question there that would have made Mr. Woods' testimony even stronger from Mr. Malloy would have been, now I'm only going to recommend this, but it's up to the U.S. Attorney's Office that's already got in you serving a life sentence whether they'll even file it. I can't make them do it. He doesn't say that. Instead, both of them make clear that the thing that isn't promised is what a judge will do. But I think clearly there's another intelligent side that's read it radically differently, so I'm going to ask for three unbiased people to read it who don't have a dog in this fight. I think the case law I've cited on the promise argument, obviously this circuit has never addressed it, but every circuit that has has held that the United States is the United States wherever the United States speaks unless the United States explicitly says we are only speaking for the Middle District of Tennessee, which at least in my experience in plea agreements is very often what we see. But here that was not the case. There was no limitation, and as I say, every circuit that's dealt with this has ruled in the favor that the United States is the United States. Briefly, the government has suggested that this argument might be waived. A few quick points. They cite a civil case Scottsdale Insurance that has never been applied by the circuit in the criminal context. It applies to a plaintiff filing a reply and trying to add in new grounds. I don't think that's applicable here. Instead, I think the applicable case law is that the government waives a waiver argument if they don't raise it below. No waiver argument was raised below. It was raised for the first time up here. I also think it's form over substance. There was no time limit on us filing a new motion to compel. Clearly, if we had just entitled our reply something else but said the exact same thing, we would be in the exact same place. Lastly, I'd refer you to the docket entry itself with the transcript. The transcript wasn't provided until August 12th, which was in fact after the government's response had already been done. That may be my fault for not having ordered it timely or known to do so. I want to say my clients in protective custody, it is very hard to communicate with humans in protective custody. As far as the Bureau of Prisons takes it, they don't exist. If I can't find a counselor who will answer the phone, no one will admit my client is alive. I'll come back to that in a different issue in a second. In any event, moving on to maybe the more complex substantial threshold showing issue. This court has never said what a substantial threshold showing is to compel a Rule 35 motion or to at least get us to an evidentiary hearing. What we do know is no one has ever really even tried it in the Sixth Circuit. All the Sixth Circuit opinions I've cited have shown cases where defendants have just sort of made a blanket assertion this is unfair. Let me go briefly through these facts here. The government and the district judge both sort of say that Paul Rudd's testimony in the Gravely trial wasn't crucial. That's a relatively massive minimization of what his assistance was. My under seal filings reveal two separate times he dealt with intercepting contraband that was coming into jail, including a guard who was willing to sell handcuff keys. His testimony, insofar as it wasn't crucial, may not have been crucial because Andre Player was alive to testify. His first assistance in the Gravely trial, of course, was when he alerted the government that he was being given letters by Duane Gravely, which he was being asked to pass on to other inmates to have Andre Player murdered. That was his first assistance in that case. He further alerted guards when Darryl the Beast Milburn was on a plane with Andre Player and said it was his intention to kill Andre Player. So on two separate occasions he intervened to protect this other witness. He also, completely ignored by everyone on the other side, he alerted the government that Duane Gravely wished to kill the prosecuting attorney and the judge. We haven't had discovery, but I believe and I've averred that because of this threat they changed prosecuting attorneys in the Eastern District of Kentucky. They actually took serious action based on it. So his assistance was profound. But the reasons for rejecting that assistance, which I'll say are not from the U.S. Attorney. Instead, the government's reply, Record Entry 799, just says there are rational reasons in the record that would justify not filing Rule 35. It doesn't say what, in fact, the U.S. Attorney did or did not do or why he did it. But all of the reasons have to do with Mr. Woods' behavior before he was sentenced. Now let me talk to you, though, about that. Mr. Woods, somewhat foolishly, had represented himself for all intents and purposes. He had a lawyer, but he did his own plea agreement. That plea agreement set out a range of punishment of 20 years to life. And it said that the government was going to recommend an offense level of 38. And they were going to recommend three offense levels off for acceptance, which would get him to a 35. This is Record Entry 799-1. That would have put him, as his ultimate criminal history was a 2, at a range of punishment of 168 to 210 months, which is below the 20-year mandatory minimum. But because of all this behavior that the government has cited, he lost acceptance of responsibility. Do you have any cases where you have at least an offer of a Rule 35 motion in response to cooperation that occurs and then the motion is not made based upon things that happened before the cooperation? I did not find any case where a U.S. attorney requested that a Rule 35 motion be filed where a Rule 35 motion was not filed. I don't know if it has happened elsewhere, but I certainly did not find any reported opinions where a U.S. attorney in one district was asking for a Rule 35. There's an opinion that I cite where this court found that a substantial threshold showing wasn't made for, among other reasons, that in Florida, the U.S. attorney alerted the U.S. attorneys up in this district, in this circuit, that someone had cooperated, but they quite explicitly did not ask for a Rule 35. And do we have the communication where the first U.S. attorney asked for it? We do not, Your Honor. Why is that? We've been denied discovery, and that's the trick. I don't get discovery until I make a substantial threshold showing. I avert in my pleadings that I've talked to the Honorable Patrick Malloy. I avert that he told me he's filed it in writing, the request that a Rule 35 be filed. I can't ask a U.S. attorney, though, to provide me sworn testimony without proper procedures. I can't jeopardize his job, and I don't think he would. I mean, he wouldn't, in fact. So you believe that Malloy sent a letter, AUSA Malloy sent a letter, because of discussions that you had with AUSA Malloy, but the letter is not in the record. It is not in the record. I've been denied all discovery at this point. And to me, that's one of the big things here. We're up here arguing this before we should be arguing anything at all. And this is something I often feel. If we had done discovery, if we had had an evidentiary hearing, you would have the ability, if there was even an issue to appeal, you would have something before you that would have some meat on it. Instead, we're talking about my averments, which are based on the best I can do with a client in protective custody. And I see my time is up right now, but I do need to address that issue about him being in protective custody, because that's all he's gotten out of it. If you want to use some of your three minutes, feel free to do that. But I've asked that this be filed under seal. The only question is whether we use an alias in our opinion, right? That's all that's left, yes. And the district court wrote with his name, so why does it matter whether we use his name? Two things. One, Westlaw and Lexis are readily accessible, whereas Pacer requires a great deal of diligence and knowledge to access things. That's one. If you just run the word Paul Woods through Westlaw, you're going to find anything. But he testified in the gravely trial, so what further harm could there be? Your Honor, I'm just going to give you this as an illustration, and this is information we both received in the last day. This weekend, Paul Woods was stabbed. He received, I am told, I don't know, the Bureau of Prisons is back to denying he exists, so I'm getting this third hand through other inmates who are calling family, but I know they've also contacted the U.S. Attorney. But he received multiple stitches in the neck. Yes, the Bloods want to kill Paul Woods. That is a given. That's beyond any dispute. But the Crips don't necessarily know about him, but they also kill snitches on general principle. It's sort of reciprocity. The Aryan Nations also kill snitches. They don't necessarily know about Paul Woods, but whenever Paul Woods goes to another jail and someone runs him through Westlaw to see if he's a good guy or a bad guy, if this opinion is out there, this makes it a very easy recipe to discover that this is a guy who has been in the prison system given the death penalty. And I want to, I know I'm long. Yeah, if you want any time for another, you should save it. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Cecil VanDevender on behalf of the United States. Let me start by addressing the issue of whether there was a binding promise to file a Rule 35 motion on the defendant's behalf. We know in our appellate brief that the first time this argument was raised was in the reply brief below, and contend that that's a valid basis for finding waiver. But even beyond that, I think it's also strong contextual evidence that no binding promise was ever made. So had Mr. Woods understood at the end of his participation in the Gravely case that Mr. Malloy had promised a Rule 35 motion will be filed, that I think the correspondence with the U.S. Attorney's Office in the Middle District of Tennessee would have reflected that. I think he would have addressed the U.S. Attorney there and said, your colleague in Kentucky has promised me a Rule 35 will be filed. I expect you to honor that promise. Instead, the correspondence was, here are some factors to consider about his reformed character, about the value of his assistance, and so forth, that are consistent with an understanding that this would be a discretionary decision on the U.S. Attorney's behalf. Likewise, when Mr. Woods went to the District Court to try to compel Rule 35, you would expect that he would say, Judge, we had a binding agreement here. A Rule 35 would be filed. The government has breached that agreement. Instead, the defendant came in and said, there's no good legitimate reason for not filing one, and perhaps the real decision is to retaliate against Mr. Woods for the 2255 motion that he filed. What about this letter that AUSA Malloy did or didn't send? He did send it, and it's correct that it's not part of the record. Why shouldn't it be part of the record? Well, there's a lot of discussion about the absence of discovery here and how it sort of erects a high bar and arguably hamstrings the defendant. I don't dispute that that is a high bar, but the case law is clear that in order to be entitled to any discovery in the first place or any evidence you're hearing, the defendant has to make a substantial threshold showing that the decision not to file Rule 35 was motivated by an unconstitutional purpose. And the reason, the policy behind that is, this isn't sort of a typical civil case where there's a factual dispute, you have some discovery and evidence you're hearing. This is really a fairly radical remedy that the defendant is seeking. He's seeking to compel the government to exercise something that is, exercise its discretion in a particular way on a matter that's committed by statute to executive branch discretion. And so he's asking one branch of government to basically say, in the first instance, well, let me have access to the U.S. Attorney's Office internal deliberations and decision-making process. Well, suppose that LeRoy said in this letter, I promised that I would file Rule 35, or that I would recommend that a Rule 35 be filed, because I'm the AUSA in a different district of Tennessee, right? But wouldn't that be important information for a reviewing court to know? Well, I think it would be relevant. I can't deny that if Mr. LeRoy had come in and said, absolutely, I made this binding promise. But again, I think in order to have that discovery in the first instance, there has to be the substantial threshold showing. And I'd also add that I've raised this later argument, but I think one reason why it's valid to sort of treat this issue as waived or improperly raised in the memo is that, let's say the defendant had come in in the first instance with his first filing and said there was a binding, unambiguous promise to file Rule 35. At that point, in the government's response, it could have sought out an affidavit from Mr. LeRoy, who, well, since it's outside the record, I won't suggest what he would state, but could have addressed this contention in its response, but because it wasn't raised. Why shouldn't we, I'm just thinking out loud, why shouldn't we remand to the district court to have those kind of concerns evaluated? You make the point, well, it wasn't raised until the reply brief, but it would seem that if the government made a promise via Molloy to recommend a Rule 35, and then if the government purred the U.S. attorney in the middle district of Tennessee decided not to, that it's important to know why that was done, whether it was for these asserted improper purposes or whether it was for perfectly proper purposes. Well, Your Honor, I think there's no legitimate factual dispute about what it is that Mr. Molloy conveyed in this message. I think given the testimony on the record, given the context in which it arose, where the defendant had already testified in the case in chief with a background understanding that he was categorically ineligible to receive a Rule 35, and then testified he merely asked for one that morning, but that nothing had been promised, maybe there's some dispute over whether the letter from Mr. Molloy merely apprised the middle district of Tennessee of his cooperation or recommended that he file one, but I don't think there's any real dispute other than speculation that he would have said, I have promised that one be filed. And so at most, it's going to confirm that maybe a recommendation had been made, but again, if a recommendation was made, then it was up to the discretion of the U.S. attorney in the middle district of Tennessee to decide whether a Rule 35 motion should be filed. And given that that question was left to the government's discretion, I think the case law on establishing a substantial threshold showing is fairly clear, can only be done by showing that there was an unconstitutional purpose, mere kind of speculation or supposition that there may have been, does not suffice. So how would a defendant show an improper purpose other than by speculating? Well, the cases where it's happened, and certainly those are few and far between, but I would suggest for good reason, usually what you see is the government indicates that it has every intention of filing a substantial assistance motion, that the defendant has already provided substantial assistance, that it's made the discretionary decision that one's appropriate, then the defendant engages in some sort of constitutionally protected act, and then the government suddenly says, well, we've decided not to file one. And then courts have been able to say, okay, well, the government proffers these reasons for why it changed its mind, but those clearly look pretextual because they've already told us that X, Y, and Z, that the assistance was substantial, etc., etc. So that's kind of the scenario where a defendant can say the government has proffered facially legitimate reasons, but the record makes clear that those reasons are pretextual. Is it troubling at all that the reasons given for not filing the motion all relate to things that happened before he gave his assistance? I mean, if the prior conduct is going to bar him from getting the benefit of this, then why hold out the carrot to begin with? You're just toying with him. Well, this case is unusual where the Assistant U.S. Attorney in Kentucky who made the reference to the Rule 35 was completely unaware of these prior considerations that, in the view of the Middle District, made a Rule 35 inappropriate. So it's an unfortunate situation where this was indicated as a possibility without any knowledge of whether it would really be appropriate. But going back to the original question of whether it's troubling that the reasons for not filing Rule 35 were all sort of well in the past, I think that's not uncommon that the government looks back at the complete history of the defendant's cooperation, breaching of the plea agreement, history of perjury and obstruction of justice, and so forth, seriousness of the offense, and determines that, based on those considerations, Rule 35 is inappropriate. But then the government shouldn't have said things like, we are thinking of making a Rule 35, or obviously we don't use the exact language that was used here, but it would seem that the government is leading on a defendant if the government is going to say, after new cooperation by the defendant, aha, you lied before the new cooperation, we are not going to give you a Rule 35. The government is having its cake and eating it, too, in those circumstances, it seems to me. Well, this would be a very troubling scenario if two facts were different, I think. One would be that the person making this representation or this promise already knew about what the considerations that militated against Rule 35 were. And the second would be if the discussion of a Rule 35 was part of some bargain for exchange. In this case, I think it's fairly clear, as I mentioned, that Mr. Woods had already agreed to testify, and had testified in the case in chief, with the understanding that no Rule 35 would be filed whatsoever. And given that this was fact testimony in a circumstance where he certainly had no criminal exposure in his own right, the jury is entitled to every person's evidence, and there's no indication that the discussion of the Rule 35 possibility was sort of a necessary predicate to induce his testimony. But I would certainly agree with you that it would be troubling, although I would submit not a constitutional violation warranting the remedy that the defendant seeks, if the government were to sort of represent that it was a possibility while knowing that it was not. I'd also note in that vein that there's no indication that the Middle District of Tennessee had already sort of prejudged this issue, that it made sort of a rash or snap judgment that he was categorically disqualified. As the government's submission below indicates, it weighed numerous factors, and maybe had the circumstances been slightly different, conceivably he could have gotten one, but it made the decision not to file one. And going back to your question earlier, Judge White, about prior acts that militated against Rule 35, I think why that makes sense and is permissible is that were that not the case, a defendant would have an incentive in some respects to do as Mr. Woods did here, have a plea agreement, breach it, fail to disclose the source of the cocaine that he brought into the Middle District, do everything contrary to what was expected of him, but then later kind of choose the terms on which he wants to provide substantial assistance, and then say, well, you're obligated now to file one for me. And so, just going back to I think the overarching theme here, this Court has made clear that there are two circumstances in which a court can compel the government to file Rule 35, or a district court can grant Rule 35 relief absent a motion from the government. Those are if the government has bargained away its discretion and promised unconditionally to file Rule 35, I submit that there's absolutely no basis to reach that conclusion here, and the second is a substantial threshold showing of an unconstitutional motive. Here, all we have is the speculation that perhaps it was to punish Mr. Woods for seeking post-conviction relief, but that sort of speculation is well settled, not enough to create a substantial threshold. Unless the Court has any further questions, I should ask the judgment of the district court be affirmed. Thank you. Thank you. One last question, if I could. Do you have any position on the request to use a pseudonym for the name of the case? Well, Your Honor, our position I think is that, as you indicated, there have been numerous filings not under seal in the district court, both in this case and in the Gravely case, and there's also a pending appeal in the Gravely case that's not under seal in this court. And the matters alleged are matters of public interest. The motion to compel the Rule 35 is effectively predicated on prosecutorial vindictiveness, and it's prosecutorial vindictiveness that's predicated itself on an allegation of prosecutorial misconduct. And so it seems to me these are issues of public interest, so I'm not sure that proceeding under a pseudonym is warranted, but that said, we don't necessarily have any objection to proceeding under a pseudonym if the Court thinks it's appropriate. And do you have any information on the stabbing over the weekend? No, Your Honor. Thank you. Your Honor, a substantial threshold showing is not made on speculation. First, it's made on the averments of the government, which they said they denied this based entirely on the conduct that got Mr. Woods to go from 20 years to life, and that's already water under the bridge, and his failure to apologize for his habeas corpus petition. Thaddeus X and Pro Armo, which I both cite, stand for the proposition that exercising your right, is a can-not-be-punished, and this would be an unconstitutional motive. Moreover, I think the most compelling argument we made, and we put on this proof, is we found four cases, each and every one of them less deserving than Mr. Woods, where the government did move for relief. In Bowers, Bowers, but a couple of years before his Rule 35, viciously attacked another inmate, beat his head against a wall, and went in his anal area in search of marijuana. He got a Rule 35. Juan Canela went to trial, always denied his culpability, never profited in his own behavior, but he alerted the government to a threat to kill them, which of course is exactly one of the things that Paul Woods did. So Juan Canela, who did one of the things that Paul Woods did, got a Rule 35 in the Middle District. Karen Sue Holloway went to trial, lost, was found to obstruct justice. She too got a Rule 35. The most compelling is Sanji Howard, a co-defendant in this case. She got a Rule 35 despite having provided three false statements to the government, including one under oath, including falsely trying to get Alexis back, which was the proceeds of drugs that she had admitted under oath was the proceeds of drugs, and then she filed a false claim. But they said in the Rule 35, you may wonder why we're filing a Rule 35. Well, despite all of these things, her cooperation may have contributed to Paul Woods pleading guilty. Okay, so what's the unconstitutional motivation? That one, especially when it comes to Howard, I think goes more to the lack of any rational connection to any legitimate government, purpose-pronged. But it also goes to show that their only justification really is punishing Mr. Woods for exercising his habeas corpus rights, because when you compare him to these other people, he wins in every single factual way. But this seems to be such an unusual position of the government because people always file 2255s. It's just a normal course of criminal practice these days. So why would they be especially angry? Well, this one had the allegation that a U.S. attorney knew that Paul Woods was having sexual intercourse, and I think that hurt everybody. Okay, so it's the nature of what was in the 2255, which I was on, so I do remember that, yes. But I think it's so telling that they say he didn't apologize. He didn't apologize. He had a right to proceed with a habeas corpus petition and put forth his best argument. I put forth in my brief why he had a lot of reasons to believe that was a good argument, even though I'm the one who argued it and thought his better argument was the fact that he didn't have an attorney. And your red light is on. Thank you. And I see that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation. Thank you. Thank you both for the argument. The case will be submitted.